UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
MIGUEL CARTAGENA, VERONICA BARZALLO,
and KAREN AMADOR,                                                    Case No:

                               Plaintiffs,                           **COMPLAINT**

                  -against-                                          **JURY TRIAL DEMANDED**

WALMART, INC.,

                               Defendant.
-------------------------------------------------------------------X

MIGUEL CARTAGENA ("Plaintiff Mr. Cartagena" or "Mr. Cartagena"), VERONICA

BARZALLO ("Plaintiff Ms. Barzallo" or Ms. Barzallo") and KAREN AMADOR ("Plaintiff Ms.

Amador" or "Ms. Amador") (collectively "Plaintiffs"), by their attorneys, JOSEPH &

NORINSBERG, LLC., complaining of WALMART, Inc., (hereinafter "Walmart" or

"Defendant"), alleges upon knowledge as to their own actions, and upon information and belief as

to all other matters, as follows:

## NATURE OF CASE

1.      Plaintiffs bring this action to remedy Defendant's illegal retaliation, unlawful

racial, disability, gender, and compensation discrimination, unlawful sexual harassment, hostile

work environment, failure to pay overtime wages and late payments in violation of: (i) the New

York State Human Rights Law ("NYSHRL") and Exec. L. § 296 et seq.; (ii) the anti-discrimination

& retaliation provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C §§ 2000(e) et seq.

("Title VII"); (iii) the Fair Labor Standards Act ("FLSA"), 29 U.S.C. Section 201 et seq., and the

New Yok Labor Law "NYLL"); and (iv) any other cause(s) of action that can be inferred from the

facts set forth herein.

2. This is an action for declaratory, injunctive, and equitable relief, as well as for monetary damages, brought by Plaintiffs seeking vindication for Defendant's blatant violations of Plaintiffs' civil rights pursuant to federal, state, and municipal law protecting the rights of employees in the workplace.

## PRELIMINARY STATEMENT

3. Defendant Walmart's store manager, Jerome McGlough ("Mr. McGlough"), a Black man who is openly homosexual, engaged in discriminatory practices with impunity against Hispanic employees and his subordinates, including Plaintiff MIGUEL CARTAGENA, Plaintiff VERONICA BARZALLO, and Plaintiff KAREN AMADOR.

4. Defendant, Walmart Inc., denied fair compensation for Mr. Cartagena's long, labor-intensive hours, failed to pay proper overtime, and fostered a hostile environment by making racially derogatory remarks towards Mr. Cartegena, Mr. Barzallo and Ms. Amador, such as repeatedly asserting that the Hispanic employees did not deserve to paid the same amount as Black employees.

5. Mr. McGlough's discriminatory conduct extended beyond unequal pay; it created a work environment where he allowed Black employees to leave tasks unfinished during their shifts. Consequently, Mr. McGlough would then unfairly burden his Hispanic subordinates with completing the remaining work. Then, Mr. McGlough would routinely criticize Plaintiffs for not finishing what he had allowed their Black colleagues to leave unfinished.

6. Worst still, to further demean and target Mr. Cartagena, Mr. McGlough subjected him to unwanted sexual harassment. On several occasions, Mr. McGlough cornered Mr. Cartagena when he was alone, and make inappropriate remarks and gestures towards Mr. Cartagena, which included suggesting that if Mr. Cartagena were gay, Mr. McGlough would engage in sexual activities with him, as well as licking his lips and blowing kisses at Mr. Cartagena.

7. Mr. Cartagena felt extremely uncomfortable by these actions, but due to prior ignored complaints and the vindictive nature of Mr. McGlough, he feared reporting the behavior and chose to focus on completing his work while enduring this hostile work environment.

8. Worse, despite Plaintiffs filing formal complaints, including an ethics complaint filed by Ms. Barzallo, Defendant failed to take meaningful action to rectify Mr. McGlough's unlawful conduct.

9. By failing to address Mr. McGlough's blatant acts of illegal discrimination against Hispanic employees, and the hostile work environment which ensued, Defendant tacitly approved Mr. McGlough's behavior, allowing him to feel emboldened. As such, Mr. McGlough began to retaliate against Plaintiffs by drastically cutting their hours.

10. Defendant's treatment worsened as time went on, highlighting systemic inequalities in both pay and work expectations based on race within Defendant's workplace – behaviors that clearly violate both Federal and State laws.

## JURISDICTION AND VENUE

11. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under Title VII and 42 U.S.C. § 1981. The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all state and municipal law claims.

12. The Court's supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts such that they form part of the same case or controversy under Article III of the United States Constitution.

13. On July 7, 2023, Plaintiffs filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging race discrimination. In addition to race

discrimination Mr. Cartagena charge of discrimination also included sexual harassment and disability discrimination.

14.     On November 21, 2023, the EEOC issued Plaintiffs a Dismissal and Notice of Right to Sue, based on Plaintiffs' claims against Walmart. This Complaint is filed within 90 days of said date.

15.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(ii), as all actions comprising the claims for relief occurred within this judicial district, and pursuant to 28 U.S.C. § 1391(b)(i), as the Defendant resides and regularly do business within this judicial district.

## JURY DEMAND

16.     Plaintiffs respectfully demand a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

17.     At all relevant times hereinafter mentioned, Plaintiff Mr. Cartagena, is a Hispanic male, and a resident of the State of New York, residing in Kings County.

18.     At all relevant times hereinafter mentioned, Plaintiff Ms. Barzallo, is a Hispanic female, and a resident of the State of New York, residing in Nassau County.

19.     At all relevant times hereinafter mentioned, Plaintiff Ms. Amador, is a Hispanic female, and a resident of the State of New York, residing in Nassau County.

20.     At all times relevant to this Complaint, Plaintiffs were an "employee" of Defendant within the meaning of Title VII and the NYSHRL.

21.     Defendant Walmart was and is a for-profit foreign business corporation, with its principal place of business located at 1220 Old Country Road, Westbury, New York 11590.

22.     At all times relevant herein, Defendant was an "employer" within the meaning of the NYSHRL and Title VII and employed four or more "employees" within the meaning of the NYSHRL and Title VII.

23.     At all times relevant herein, Plaintiff Mr. Cartagena was employed as an Assistant Manager in the Consumables Department at Walmart's Farmingdale store and General Manager at Walmart's Westbury store.

24.     At all times relevant herein, Plaintiff Ms. Barzallo and Ms. Amador were and are store clerks at Walmart's Westbury store.

## BACKGROUND FACTS

**Plaintiff Mr. Cartagena**

25.     Mr. Cartagena is a long-serving employee who joined Walmart in 1998. Despite his commitment and dedication to the company, he has faced egregious treatment under the supervision of Jerome McGlough.

26.     The discriminatory behavior began in the middle of 2019 when Mr. Cartagena was ostensibly promoted to Assistant Manager in the Consumables department at Walmart's Farmingdale, New York store.

27.     In early fall of 2019, Mr. Cartagena lodged a formal complaint with Lisa [last name unknown], a manager at Farmingdale, New York. Mr. Cartegena advised Lisa that Mr. McGlough had told him that he only viewed Mr. Cartagena as a "slave" and "useless."

28.     Following this complaint, Lisa brought the complaint to Mr. McGlough's attention. McGlough approached Mr. Cartagena and remarked, *"oh, you complained about me?"* Mr. Cartegena remained quiet, hoping to avoid retaliation from Mr. McGlough.

29.     In response to Mr. Cartegena's complaint, Mr. McGlough started undermining his authority by instructing associates in the General Merchandise department to disregard Mr. Cartagena's directions and not perform tasks assigned by Mr. Cartagena.

30.     Worse, Mr. McGlough openly expressed his racist views, stating that Hispanic employees, including Mr. Cartagena, did not work as hard as non-Hispanic workers.

31.     This deliberate act of retaliation forced Mr. Cartagena to work well over his scheduled 40 hours per week, often exceeding 60 hours, in order to complete work he had rightfully delegated to others but was ultimately his responsibility to complete. Consequently, Mr. Cartagena was frequently required to arrive before his scheduled shift and work well past his shift end time.

32.     Mr. McGlough consistently assigned Mr. Cartagena predominantly manual labor tasks, deviating from his managerial responsibilities. In fact, 85% of Mr. Cartagena's time was spent doing manual work. Moreover, Mr. Cartagena was frequently made to work alone or with minimal support while unloading trucks, opening boxes, and stocking shelves.

33.     Furthermore, Mr. McGlough demanded excessive work hours from Mr. Cartagena, often extending beyond the scheduled shifts and well over the legal limit of forty hours per week. Mr. Cartagena was expected to arrive early, stay late, and even work on his scheduled days off, all without receiving proper compensation for overtime hours.

34.     For example, Mr. Cartagena regularly worked various shifts seven days a week, either from 7:00 a.m. to 7:00 p.m., 7:00 a.m. to 9:00 p.m., 11:00 a.m. to 12:00 a.m., or 11:00 a.m. to 3:00 a.m. Through all these noted shifts, Mr. Cartagena worked overtime and was not compensated for the overtime hours that he worked. Moreover, on (4) separate occasions, Mr. Cartagena worked from 2:00 p.m. through 7:00 a.m.

35.     In addition to Defendant's failure to compensate Mr. Cartagena for his owed overtime hours, by misclassifying Ms. Cartagena as a "manager" instead of as a "manual worker," Defendant's failed to pay Mr. Cartagena on a weekly basis, instead paying him biweekly.

36.     The aforementioned pattern of exploitation and discriminatory treatment persisted, resulting in Mr. Cartagena suffering three strokes while working at Walmart, directly attributable to the oppressive conditions that Mr. Mc Clough required him to endure.

37.     Upon engaging in protected activity and reporting Mr. Cartagena's illegal acts of discrimination to the Farmingdale store's General Manager, Lisa [last name unknown], Mr. Cartagena was met with indifference. Lisa failed to address Mr. McGlough's behavior and dismissed Mr. Cartagena's complaints, neglecting her legal obligation to investigate the matter. This allowed the hostile work environment to persist, where ultimately Mr. Cartagena experienced a stroke on or about November 4, 2019, while under Mr. McGlough's supervision and the unrelenting degree of stress that Mr. McGlough had caused Mr. Cartagena to experience at work.

38.     After a four-month medical leave, Mr. Cartagena returned to work with prescribed restrictions. However, when he requested a reasonable accommodation from Lisa and Mr. McGlough, without engaging in the interactive process, they refused his request.

39.     Rather, they instructed  Mr. Cartagena to have his all restrictions removed by his doctor before he could return to work.

40.     Recognizing that if he were to remain working at the Farmingdale location, he would continually be subjected to illegal acts of discrimination and now retaliation for having complained, Mr. Cartagena sought a transfer to the Westbury location.

41.     Although he initially experienced success at the Westbury location, unfortunately, Mr. McGlough was appointed as the General Manager of the Westbury store in spring 2021. Mr. Cartagena reported his concerns to Market Manager Steve [last name unknown], highlighting the

issues he had faced at the Farmingdale location. Despite the disclosure, no action was taken at that time.

42. Upon Mr. McGlough's arrival at the Westbury store, he continued his reprehensible conduct. He expressed dissatisfaction with the number of Hispanic employees in Mr. Cartagena's department and made derogatory comments about their work ethic, remarking, "you still work for this company? Let's see what you'll do now." Mr. McGlough began to inspect the store, and stated to Mr. Cartegena, *"look at all these Spanish people here. We need some people with color."* Mr. McGlough then remarked, *"I'm the boss here, I am in control. So, who will you complain to now?"*

43. Moreover, Mr. McGlough deliberately reassigned associates from Mr. Cartagena's departments, forcing him to work additional hours and pick up the slack.

44. Just as in Farmingdale, Mr. McGlough displayed a consistent pattern of discrimination, retaliation, and harassment towards Mr. Cartagena. These actions caused significant physical and psychological harm to Mr. Cartagena and created a hostile work environment.

45. To further demean and punish Mr. Cartagena, Mr. McGlough subjected him to unwanted sexual harassment. On several occasions, Mr. McGlough cornered Mr. Cartagena when he was alone, making inappropriate remarks and gestures.

46. These included suggesting that if Mr. Cartagena were gay, Mr. McGlough would engage in sexual activities with him, as well as licking his lips and blowing kisses at Mr. Cartagena. Specifically, Mr. McGlough stated, *"mmmmm, you smell so good,"* with a sound of delight, and remarked *"I would like that smell on my bed."* Mr. McGlough would also routinely stare at Mr. Cartagena up and down.

47. Mr. Cartagena felt extremely uncomfortable by these actions, but due to prior ignored complaints and the vindictive nature of Mr. McGlough, he feared reporting the behavior and chose to focus on completing his work while enduring this hostile work environment.

48. Similar to the incidents at the Farmingdale store, Mr. McGlough stripped Mr. Cartagena of his supervisory responsibilities and forced him to perform physically demanding manual labor without proper compensation for the hours worked beyond the standard 40-hour workweek. The combination of forced labor and excessively long hours took a toll on Mr. Cartagena, both physically and psychologically.

49. Recognizing the severity of the situation, Mr. Cartagena finally mustered the courage to file an official complaint with Walmart's Ethics department regarding Mr. McGlough's behavior.

50. However, before any action could be taken, on June 23, 2021, Mr. Cartagena suffered a second stroke while working, directly linked to the stress caused by Mr. McGlough's actions.

51. After months of rehabilitation, Mr. Cartagena returned to work at the Westbury location, providing his supervisors with the medical restrictions prescribed by his doctor.

52. However, Mr. McGlough rejected these accommodations, reduced the number of associates in Mr. Cartagena's department, and demanded that he work over 10 hours per day to fulfill the physically demanding workload.

53. Despite expressing his inability to work such long hours and perform strenuous tasks, Mr. Cartagena's requests for reasonable accommodations were disregarded.

54. Tragically, on March 30, 2022, due to the excessive stress and long hours imposed on him, Mr. Cartagena suffered a third stroke during his shift at the Westbury location.

55.    Following his medical leave, when Mr. Cartagena was finally cleared to return to work in September 2022, he was informed by his direct supervisors that his position at the Westbury store had been filled during his medical leave.

56.    Mr. Cartagena was advised to apply for open positions at other stores, but it was made clear that his previous position had been eliminated or filled. This unjust termination further highlights the discriminatory and retaliatory actions taken against Mr. Cartagena.

57.    On November 9, 2022, Mr. Cartagena was unlawfully terminated from his employment with Walmart.

**Plaintiff Ms. Barzallo**

58.    In or about 1997, Ms. Barzallo started working for Walmart's Westbury, New York location and throughout her tenure she maintained a meticulous work record.

59.    Walmart's Store Manager at the Westbury location, Mr. McGlough was openly prejudiced against Hispanic employees, routinely telling them that they were lazy and did not work as hard as Black employees.

60.    Mr. McGlough openly referred to Ms. Barzallo as lazy for not completing the work left by her colleagues, despite the fact that the overnight shift - predominately Black employees - had been permitted by Mr. Mc Clough to leave departments unkempt, boxes/pallets of goods packed and not prepared to be stocked on the shelves, causing shelves to be left unstocked and empty.

61.    Shortly after Ms. Barzallo filed a formal ethics complaint against Mr. McGlough in February of 2022, Mr. McGlough reduced Ms. Barzallo and other similar situated Hispanic employees' hours from 40 hours per week to 32 hours per week, causing a drastic reduction in her pay.

62. Moreover, Ms. Barzallo was regularly paid biweekly by Defendant, despite the fact that she was a manual worker and was thus entitled to weekly payments.

63. Multiple additional ethics complaints describing Mr. McGlough's toxic behavior were filed in May and June of 2022, which launched multiple investigations into his conduct, but these efforts failed to stop or deter Mr. McGlough's behavior.

64. In fact, Mr. McGlough approached Ms. Barzallo and other employees in the Westbury store and told them that he knew that Mr. Cartagena was behind the multiple ethics complaints filed by the Hispanic employees, and he intended to retaliate.

65. Ms. Barzallo was hopeful that things would change in the Fall of 2022 when Rick Sanichara replaced Mr. McGlough as the Westbury store manager, but Ms. Barzallo soon learned that the treatment of Hispanic workers in the Westbury store would remain the same. Despite lodging several complaints, Hispanic workers have continued to face substantially the same treatment as before.

66. Ms. Barzallo as well as the other Hispanic employees at the Westbury store are constantly demanded to complete work left unfinished by non-Hispanic employees, while being paid less than those employees.

**Plaintiff Ms. Amador**

67. In or about 2008, Ms. Amador started working for Walmart's Westbury, New York location and throughout her tenure she maintained a meticulous work record.

68. Walmart's Store Manager at the Westbury location, Mr. McGlough, was openly prejudiced against Hispanic employees, routinely telling them that they were lazy and did not work as hard as Black employees.

69. Mr. McGlough openly referred to Ms. Amador as lazy for not completing the work left by her colleagues, despite the fact that the overnight shift - predominately Black employees -

would leave departments unkempt, boxes/pallets of goods packed and not prepared to be stocked on the shelves, causing shelves to be left unstocked and empty.

70.     After Ms. Amador's Hispanic co-worker Ms. Barzallo filed a formal ethics complaint against Mr. McGlough in February of 2022, Mr. McGlough reduced Ms. Amador and other similar situated Hispanic employees' hours from 40 hours per week to 32 hours per week, drastically reducing her pay.

71.     Around the same time Ms. Amador also learned that she, along with other similarly situated Hispanic employees, were all being paid less per hour than the Black employees performing substantially the same job. In fact, they learned that they were being paid less than the overnight staff who would routinely leave work for them to complete.

72.     Moreover, Ms. Amador was regularly paid biweekly by Defendant, despite the fact that she was a manual worker and was thus entitled to weekly payments.

73.     In or about February 2022, Plaintiff Ms. Amador filed an ethics complaint against an Black colleague who screamed at her during a shift. Mr. McGlough confronted Plaintiff Ms. Amador and demanded that she withdraw the complaint or face retaliation. Ms. Amador acquiesced to Mr. McGlough's unlawful demand due to fear of retaliation.

74.     Multiple additional ethics complaints describing Mr. McGlough's toxic behavior were filed in May and June of 2022, which launched numerous investigations into his conduct, but these efforts failed to stop or deter Mr. McGlough's behavior.

75.     In fact, Mr. McGlough approached Ms. Amador and other employees in the Westbury store and told them that he knew that Mr. Cartagena was behind the multiple ethics complaints filed by the Hispanic employees, and he intended to retaliate.

76.     Ms. Amador was hopeful that things would change in the Fall of 2022 when Rick Sanichara replaced Mr. McGlough as the Westbury store manager, but Ms. Amador soon learned

that the treatment of Hispanic workers in the Westbury store would remain the same. Despite making a number of complaints, Hispanic workers have continued to face substantially the same treatment as before.

77. Ms. Amador as well as the other Hispanic employees at the Westbury store, are constantly demanded to complete work left unfinished by non-Hispanic employees, while being paid less than those employees.

78. As a direct consequence of the Defendant's conduct described above, the Plaintiffs have suffered and continue to suffer significant emotional and economic damages that are ongoing.

## PLAINTIFFS' FIRST CLAIM AGAINST DEFENDANT
### *(Racial Discrimination Violation of 42 U.S.C. § 1981)*

79. Plaintiffs repeat, reiterate, and reallege each allegation set forth above with the same force and effect as if more fully set forth herein.

80. 42 U.S.C. § 1981 prohibits discrimination in the terms, conditions, and privileges of employment because of an individual's race.

81. Defendant, as described above, discriminated against Plaintiffs in violation of the 42 U.S.C. § 1981 by making material decisions regarding Plaintiffs' employment such as terminating Plaintiff Mr. Cartagena's employment and reducing Plaintiff Ms. Barzallo and Ms. Amador's work hours.

82. Defendant, as described above, subjected Plaintiffs and others to a continuous practice and policy of discrimination, by carrying out a series of related and unremedied discriminatory acts over time culminating in terminating Plaintiff Mr. Cartagena's employment and a reduction of Mr. Barzallo and Ms. Amador work hours.

83. As a direct and proximate result of Defendant's discriminatory conduct and unlawful retaliation in violation of 42 U.S.C. § 1981, Plaintiffs have suffered, and continue to suffer, monetary and/or economic damages, including, but not limited to, loss of future income,

compensation and benefits for which they are entitled to an award of monetary damages and other relief.

84.     As a direct and proximate result of Defendant's discriminatory conduct and unlawful retaliation in violation of 42 U.S.C. § 1981, Plaintiffs have suffered and continue to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which they are entitled to an award of monetary damages and other relief.

### PLAINTIFFS' SECOND CLAIM AGAINST DEFENDANT
#### (*Retaliation in Violation of 42 U.S.C. § 1981*)

85.     Plaintiffs repeat, reiterate, and reallege each allegation set forth above with the same force and effect as if more fully set forth herein.

86.     42 U.S.C. § 1981 prohibits an employer from retaliating against an employee who has engaged in a protected activity.

87.     Defendant, as described above, retaliated against Plaintiffs in violation of 42 U.S.C. § 1981 by making material decisions regarding Plaintiffs' employment such as terminating Mr. Cartagena's employment and reducing Plaintiff Ms. Barzallo and Ms. Amador's work hours after they engaged in protected activity by complaining about the unlawful discriminatory practices.

88.     As a direct result of Defendant's unlawful retaliation in violation of 42 U.S.C. § 1981, Plaintiffs have suffered, and continue to suffer, monetary and/or economic damages, including, but not limited to, loss of future income, compensation, and benefits for which they are entitled to an award of monetary damages and other relief.

89.     As a direct and proximate result of Defendant's unlawful retaliation in violation of 42 U.S.C. § 1981, Plaintiffs have suffered and continue to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress

and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which they are entitled to an award of monetary damages and other relief.

## PLAINTIFFS' THIRD CLAIM AGAINST DEFENDANT
### *(Racial Discrimination in Violation of the Title VII)*

90.　　Plaintiffs repeat, reiterate, and reallege every allegation set forth above with the same force and effect as if more fully set forth herein.

91.　　Title VII prohibits discrimination in the terms, conditions, and privileges of employment based on an individual's race.

92.　　Defendant, as described above, discriminated against Plaintiffs in violation of Title VII by permitting racial discrimination during Plaintiff's employment.

93.　　Defendant, as described above, subjected Plaintiffs and others to a continuous practice and policy of discrimination, by carrying out a series of related and unremedied discriminatory acts over multiple years, culminating in terminating Plaintiff Mr. Cartagena's employment and a reduction of Mr. Barzallo and Ms. Amador work hours.

94.　　By engaging in the foregoing conduct, Defendant has violated Plaintiffs' rights under the Title VII of the Civil Rights Act of 1964, 42 U.S.C §§ 2000e et seq., in that Plaintiffs were disparately treated based on racial affiliation.

95.　　Defendant acted intentionally with malice or with reckless disregard for Plaintiffs' rights, proximately causing Plaintiffs mental anguish, pain and suffering, emotional distress, severe mental anguish, and the loss of income and other related benefits, thereby entitling Plaintiffs to an award of monetary damages and other relief.

## PLAINTIFFS' FOURTH CLAIM AGAINST DEFENDANT
### *(Retaliation in Violation of the Title VII)*

96.　　Plaintiffs repeat, reiterate and reallege every allegation set forth above with the same force and effect as if more fully set forth herein.

97.     Title VII prohibits retaliation following an employee's complaint of discrimination in the workplace, whether formally or informally.

98.     Defendant, as described above, retaliated against Plaintiffs in violation of Title VII by terminating Mr. Cartagena's employment and reducing Ms. Barzallo and Ms. Amador's work hours.

99.     By engaging in the foregoing conduct, Defendant has violated Plaintiffs' rights under Title VII of the Civil Rights Act of 1964, 42 42 U.S.C §§ 2000e et seq., in that Plaintiff was disparately treated based on racial affiliation.

100.    Defendant acted intentionally with malice or with reckless disregard for Plaintiffs' rights, proximately causing Plaintiffs mental anguish, pain and suffering, emotional distress, severe mental anguish, and the loss of income and other related benefits, thereby entitling Plaintiffs to an award of monetary damages and other relief.

## PLAINTIFFS' FIFTH CLAIM AGAINST DEFENDANT
### *(Racial Discrimination in Violation of the NYSHRL)*

101.    Plaintiffs repeat, reiterate, and reallege every allegation set forth above with the same force and effect as if more fully set forth herein.

102.    The NYSHRL prohibits discrimination in the terms, conditions, and privileges of employment based on an individual's race.

103.    Defendant, as described above, discriminated against Plaintiffs in violation of the NYSHRL by permitting racial discrimination during Plaintiff's employment. Furthermore, NYSHRL prohibits retaliation by any person against any individual who in good faith complains about discriminatory practices to which he/she has been subjected.

104.    Defendant, as described above, subjected Plaintiffs and others to a continuous practice and policy of discrimination, by carrying out a series of related and unremedied

discriminatory acts over multiple years, culminating in terminating Plaintiff Mr. Cartagena's employment and a reduction of Mr. Barzallo and Ms. Amador work hours.

105.    By engaging in the foregoing conduct, Defendant has violated Plaintiffs' rights under the New York State Human Rights Law, in that Plaintiffs were disparately treated and retaliated against based on racial affiliation and their complaints of such.

106.    Defendant acted intentionally with malice or with reckless disregard for Plaintiffs' rights, proximately causing Plaintiffs mental anguish, pain and suffering, emotional distress, severe mental anguish, and the loss of income and other related benefits, thereby entitling Plaintiffs to an award of monetary damages and other relief.

## PLAINTIFFS' SIXTH CLAIM AGAINST DEFENDANT
### *(Retaliation in Violation of the NYSHRL)*

107.    Plaintiffs repeat, reiterate, and reallege every allegation set forth above with the same force and effect as if more fully set forth herein.

108.    The NYSHRL prohibits retaliation following an employee's complaint of discrimination in the workplace, whether formally or informally.

109.    Defendant, as described above, retaliated against Plaintiffs in violation of the NYSHRL by terminating Mr. Cartagena's employment and reducing Ms. Barzallo and Ms. Amador's work hours.

110.    By engaging in the foregoing conduct, Defendant has violated Plaintiffs' rights under the New York State Human Rights Law, in that Plaintiffs were retaliated against based on racial affiliation and their complaints of such.

111.    Defendant acted intentionally with malice or with reckless disregard for Plaintiffs' rights, proximately causing Plaintiffs' mental anguish, pain and suffering, emotional distress, and the loss of income and other related benefits, thereby entitling Plaintiffs to an award of monetary damages and other relief.

## PLAINTIFF MR. CARTAGENA'S SEVENTH CLAIM AGAINST DEFENDANT
### *(Disability Discrimination in Violation of the Title VII)*

112.     Mr. Cartagena repeats, reiterates and realleges each and every allegation contained in the foregoing paragraphs as if set forth herein.

113.     At all relevant times herein, Mr. Cartagena was "disabled" within the meaning of the Title VII. In addition, and/or in the alternative, Plaintiff was perceived as "disabled" by the Defendant.

114.     Notwithstanding Mr. Cartagena's disability, with reasonable accommodations, Plaintiff was able and willing to perform the essential functions of his job.

115.     Consequently, on at least one or more occasions, Mr. Cartegena made several requests for a reasonable accommodation so he could return to work that was summarily and unlawfully denied without engaging in the interactive process.

116.     As a result of his disability, in March 2022 Mr. Cartagena had three strokes while employed by defendant.

117.     After Mr. Cartagena's third stroke in March 2023, Mr. Cartagena was out on disability until approximately November 2023. Upon his request to return he was notified by Defendant that his employment had been terminated.

118.     Despite receiving Mr. Cartagena's notifications that he was out due to a disability, Defendant insisted that Plaintiff should have returned to work sooner.

119.     As a result of Mr. Cartagena's disability, Defendant subjected Plaintiff to an adverse employment action, and summarily terminated Plaintiff.

120.     Based on the foregoing, Mr. Cartagena demands judgment against the Defendant, together with compensatory damages, punitive damages, interest, cost of suit, attorneys' fees, enhanced attorneys' fees, equitable back pay, equitable front pay, equitable reinstatement, and any other relief that the Court deems equitable and just.

## PLAINTIFF MR. CARTAGENA'S EIGHTH CLAIM AGAINST DEFENDANT
### *(Sex and Sexual Harassment in Violation of the Title VII)*

121.     Mr. Cartagena repeats, reiterates and realleges each and every allegation contained in the foregoing paragraphs as if set forth herein.

122.     Plaintiff is a member of a protected class under Title VII by virtue of his gender. Title VII prohibit discrimination in the terms, conditions, and privileges of employment on the basis of an individual's gender.

123.     Defendant discriminated against Mr. Cartagena in violation of Title VII by permitting and fostering a hostile work environment, in the form of severe sexual harassment.

124.     Specifically, Mr. McGlough intended to cause, and did in fact cause, Plaintiff to suffer apprehension of an immediate harmful and offensive contact, as well as severe emotional distress, by harassing Mr. Cartagena and asking him to engage in sexual activities with him, as well as licking his lips and blowing kisses at Mr. Cartagena.

125.     Mr. Cartagena's gender was the determining factor and/or a motivating factor in Defendant's actions toward him.

126.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the Title VII, Mr. Cartagena has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

## PLAINTIFF MR. CARTAGENA'S NINTH CLAIM AGAINST DEFENDANT
### *(Sex and Sexual Harassment in Violation of the NYSHRL)*

127.     Mr. Cartagena repeats, reiterates and realleges each and every allegation contained in the foregoing paragraphs as if set forth herein.

128.     The Plaintiff is a member of a protected class under the NYSHRL by virtue of his gender.  NYSHRL prohibits discrimination in the terms, conditions, and privileges of employment on the basis of an individual's gender.

129.     Defendant discriminated against Mr. Cartagena in violation of the NYSHRL by permitting and fostering a hostile work environment, in the form of severe sexual harassment.

130.     Specifically, Mr. McGlough intended to cause, and did in fact cause, Plaintiff to suffer apprehension of an immediate harmful and offensive contact, as well as severe emotional distress, by harassing Mr. Cartagena by asking him to engage sexual activities with him, as well as licking his lips and blowing kisses at Mr. Cartagena.

131.     Mr. Cartagena's gender was the determining factor and/or a motivating factor in Defendant's actions toward him.

132.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYSHRL, Mr. Cartagena has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

### PLAINTIFF MR. CARTAGENA'S  TENTH CLAIM AGAINST DEFENDANT
*(Unpaid Overtime Under FLSA)*

133.     Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

134.     29 U.S.C. § 207(a) requires employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay for all hours worked exceeding forty in a workweek.

135.     As described above, Defendant is an "employer" within the meaning of the FLSA, while Plaintiff is an "employee" within the meaning of the FLSA.

136.    Plaintiff worked in excess of forty hours per week, yet Defendant failed to compensate Plaintiff in accordance with the FLSA's overtime provisions.

137.    Defendant willfully violated the FLSA by misclassifying Mr. Cartagena as a Manager.

138.    Plaintiff is entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their respective regular rates of pay.

139.    Plaintiff is also entitled to liquidated damages, interest, attorneys' fees, and costs for Defendant's violations of the FLSA's overtime provisions.

### PLAINTIFFS' ELEVENTH CLAIM AGAINST DEFENDANT
*(Fairly to Timely Pay Minimum Wages/All Wages in Violation of the NYLL)*

140.    Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if fully set forth herein.

141.    N.Y. Lab. Law § 652(1) and 12 NYCRR § 142-2.1 prescribe a minimum wage that employers must pay to their employees for each hour worked.

142.    Similarly, NYLL §§ 190, 191, and 663(1) require that employers pay wages to their employees in accordance with the agreed terms of employment, and in the case of manual workers, at least as frequently as on a weekly basis.

143.    As described above, Defendant is an "employer" within the meaning of the NYLL, while Plaintiffs are an "employee" within the meaning of the NYLL and NYCRR.

144.    Moreover, Plaintiff, Mr. Cartagena, was a "manual worker," as he spent virtually 85% of his working time, and therefore well more than 25% of his time, performing physically laborious tasks such as unloading trucks, opening boxes, and stocking shelves. Plaintiffs Ms. Barzallo and Ms. Amador are also "manual workers," as they spent 100% of their time performing physically laborious tasks, including unloading trucks, opening boxes, and stocking shelves.

145. As also described above, Defendant did not compensate Plaintiffs at the minimum hourly rate required by the NYLL for all hours worked by failing to compensate them for any hours worked over (40) hours a week.

146. Moreover, Defendant did not compensate Plaintiffs on a weekly basis as is required under the NYLL, instead compensating them biweekly for the hours they worked.

147. At the least, Plaintiffs are entitled to payment at the minimum wage for every hour worked for Defendant pursuant to the NYLL's minimum wage provisions.

148. Plaintiffs are also entitled to liquidated damages, interest, and attorneys' fees for Defendant's violations of the NYLL's minimum wage provisions.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against Defendant as follows:

a. Preliminary and permanent injunctions against the Defendant and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

b. A judgment declaring that the practices complained of herein are unlawful and in violation of the United States, New York State and New York State laws.

c. An order restraining Defendant from any retaliation against Plaintiffs for participation in any form in this litigation;

d. A finding that Defendant committed a continuing violation of the United States and New York State laws described herein, such that Plaintiff's statute of limitations period is delayed until the last discriminatory act in furtherance of Defendant's violations thereof;

e. Damages which Plaintiffs have sustained as a result of the Defendant's conduct, including back pay, front pay, general and special damages for lost compensation and employee

benefits that he would have received but for Defendant's conduct, for out-of-pocket losses that Plaintiffs have incurred due to the Defendant's conduct;

f. An award for all non-monetary and/or compensatory damages, including but not limited to, compensation for severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

g. An award of damages in an amount to be determined at trial to compensate Plaintiffs for harm to her professional and personal reputations and loss of career fulfillment;

h. Punitive damages to the extent authorized by law in an amount commensurate with Defendant's ability and to deter future unlawful conduct;

i. Awarding Plaintiffs costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs;

j. Pre-judgment and post-judgment interest, as provided by law; and

k. Granting Plaintiff other and further relief as this Court finds necessary and proper.

Dated: New York, New York
       February 15, 2024

Respectfully Submitted,

JOSEPH & NORINSBERG, LLC.

_Erica Meyer_

Erica Meyer, Esq.
110 East 59th Street, Suite 2300
New York, New York 10022
Erica@employeejustice.com